HARTFORD ACCIDENT & INDEMNITY COMPANY v.
FRED H. WARREN

5-4826                                    438 S.W. 2d 31

Opinion Delivered March 10, 1969

*Daggett* & *Daggett* for appellant.

*Jake Breick* for appellee.

John A. Fogleman, Justice.    Hartford Accident & Indemnity Company appeals from a judgment in favor of Fred H. Warren under the uninsured motorists clause of a policy issued to him by Hartford.    The principal point urged by appellant for reversal is its contention that a judgment against the uninsured motorist was a condition precedent to this action.

The policy in question contained clauses identical with those in the policy involved in *MFA Mutual Ins. Co.* v. *Bradshaw*, 245 Ark. 95, 431 S.W. 2d 252. In that case we held that when consent of the company to an action against the uninsured motorist was required to make a judgment therein conclusive on the company, the insured had the option to sue either his insurance company or the uninsured motorist or both. We deem this decision to be controlling here.    This does not in any way prevent the insurance company from cross complaining against the uninsured motorist in an action brought against it, nor does it prevent a separate action by the insurance company against the uninsured motorist after a judgment in favor of its insured has been paid by it.

Appellant urges that the policy in this case does not contain the "consent" clause which influenced our decision in the *Bradshaw* case.    In this respect, appellant is in error as the policy exhibited does contain this clause.    The fact that reliance was placed on the lack of consent in the *Bradshaw* case but not in this case makes no difference in the application of the principle involved.

Appellant also contends that the judgment for $12,-000 is excessive and reflects the passion and prejudice of the jury.

There was evidence showing that appellee was earning $90 per week at the time of his injury. Warren's testimony was in substance:

During the rush season he was also paid for overtime. Although he had an arthritic condition, it had never caused him to miss any work prior to the collision in which he was injured. After the automobile he was driving was struck from the rear by the uninsured motorist, Warren went to the emergency room of the hospital in West Memphis with soreness in the stomach area. The next morning he returned for a more thorough examination by Dr. Peeples. At that time his neck was beginning to get sore and his back stiff. He was hurt from the back of his neck down through his legs. He missed one or two days of work at this time. Because of his condition, his foreman got others to do some of the work he was normally expected to do. The foreman actually did some of it himself. Warren was given light work and was assigned the duty of instructing newly employed persons. About two months after the collision Dr. Peeples prescribed traction and placed Warren in the hospital for ten days. During this stay in the hospital, Warren only remained in traction about three hours. He was removed from traction by the doctor because of the severe pain it was causing. He has obtained no relief from his condition and cannot lie flat on his back even long enough for the taking of x-rays without severe pain because of these injuries. He cannot lift his right arm above his head because "it couldn't be any worse if one of these doctors was tearing it off." He complained of a catch in this arm at any time he at-

tempted to reach behind him.    He also said that his left arm was involved.

Although Warren is now totally disabled because of tuberculosis, he claims to have lost approximately three weeks from work during the five months following the collision because of his injuries.

Dr. A. H. Crenshaw, an orthopedic surgeon of Memphis, Tennessee, first saw Warren on a reference by Warren's West Memphis physician. This was about seven weeks after his injury.    Dr. Crenshaw's diagnosis was sprain of the neck and low back superimposed upon preexisting osteoarthritis.    He prescribed mild analgesics, application of wet hot packs, continuation of regular work, and staying in touch with Dr. Peeples. He next saw Warren about one year later when he found that the patient had reached maximum improvement.    He expressed the opinion that appellant had a permanent partial disability to the body as a whole of about 20 percent, with one-half resulting from the preexisting condition and the other half from the collision. An examination about ten months later revealed no changes.    Dr. Crenshaw expressed the opinion that Warren would not have suffered any disability from the collision in the absence of the preexisting arthritic condition and that this condition was aggravated by the collision sufficiently to cause the onset of his discomfort.    While Dr. Crenshaw admitted that his evaluation of the disability resulting from the collision was based almost entirely on the subjective symptoms, he also said that it was based in part on his experience in treatment of numerous cases of this type. He expressed the opinion that appellant was not a malingerer.

In addition there was testimony that Warren discontinued his hunting and fishing and other outdoor activities after his injury.    His wife testified that he had often come in from work and gone to bed without eating because of the pain he was suffering.    She said that he

avoided driving the automobile because of his inability to turn his head. After the collision he became very irritable with members of his family.

It was stipulated that appellee had an average future lifetime expectancy of 19 years.

We have no means for accurate measurement of pain and suffering. Nor do we have any means of determining the exact impact of a 10 percent disability upon the future earnings or earning capacity of one whose livelihood is earned through physical activities. In view of the evidences of pain exhibited by Warren, his hospitalization and his disability, we are unable to say that the judgment for $12,000 evidences passion or prejudice on the part of the jury or that it shocks the conscience of the court. Consequently, we cannot reverse the judgment on this basis.

The judgment is affirmed.